|   |   |
|---|---|
| SCOTT SCHUTZA, | Case No.: 14-CV-2653 JLS (RBB) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| | (ECF No. 60) |
| PREMIER AUTOMOTIVE OF CA, LLC, a California Limited Liability Company, | |
| Defendant. | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Presently before the Court is Plaintiff Scott Schutza's Motion for Partial Summary Judgment ("Mot.," ECF No. 60). Also before the Court is Defendant's Opposition to the Motion ("Opp'n," ECF No. 62). Plaintiff did not file a Reply. The Court vacated oral argument on the Motion and took the matter under submission without oral argument. ECF No. 63. For the reasons stated below, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

**I.  Hand Controls**

Hand controls allow a person to operate a vehicle's accelerator and brake pedals using their hands instead of their feet. Defendant Toyota Poway's Additional

1

Uncontroverted Facts ("Def.'s Facts"), ECF No. 62-3 at 16–32, ¶ 13. There are many types of hand controls to accommodate the many different types of disabilities, *id.* ¶ 14, and some disabled persons may require the installation of devices in addition to hand controls to operate their vehicle safely. *Id.* ¶ 50.

Hand controls may be either permanent, meaning that they are firmly mounted to the vehicle, or portable (or temporary), meaning that they are not secured to the vehicle and can be installed or removed without any physical modifications to the vehicle or its components. *Id.* ¶¶ 32–34, 66. Permanent hand controls come in a variety of styles to accommodate the capabilities, strengths, and limitations of the person using the hand controls, *id.* ¶ 43, and can be electronic or mechanical. *Id.* ¶ 44. Electronic hand controls are typically used by individuals who have limited hand strength and/or function. *Id.* ¶ 45. Mechanical hand controls come in a variety of different styles that accomplish braking and accelerating through different combinations of hand manipulations, including push/right angle, push/pull, push/rock, and push/twist. *Id.* ¶ 46. Installation of permanent hand controls requires the installer to make alterations to the vehicle, which may or may not be reversible. *Id.* ¶ 63. Alterations may include locking out the tilt steering column, cutting the knee bolster, cutting the dash panel, cutting or removing HVAC vents, modifying the center console, drilling holes through the brake/accelerator pedals and the floor of the vehicle, removing air bags, and modifying turn signal indicators. *Id.* ¶ 64.

Portable hand controls, by contrast, come in fewer styles than their permanent counterparts. *Id.* ¶ 47. They typically consist of two rods, with the end of one rod attached to the brake pedal and the end of the other attached to the accelerator pedal, *id.* ¶ 66, often by means of clamps tightened by hand or with an Allen wrench. *Id.* ¶ 67. Unlike permanent hand controls, portable hand controls are not available in a push/rock style, *id.* ¶ 48, and most portable hand controls come either in a push/pull or push/push style. *Id.* Because portable hand controls are not permanently attached to the vehicle, it is possible for the controls to move, sway, slip, or come loose while the vehicle is being driven, *id.* ¶¶ 70, 72, thereby leaving the driver unable to control the pedals effectively or at all. *Id.* ¶ 71.

Although portable hand controls are typically advertised as being "universal," meaning that they may be installed in many different vehicles, *id.* ¶ 36, installation of any type of hand control requires that the vehicles be equipped with automatic transmission, power brakes, and power steering. *Id.* at 37. Further, the manufacturer of the specific temporary hand control at issue in this case, the QuicStick, testified that his controls were incompatible with Toyota vehicles. *See* Decl. of Antoinette Tutt in Support of Def.'s Opp'n ("Tutt Decl."), ECF No. 62-1, Ex. D at 65:11–21.

Although certification by the National Mobility Equipment Dealers Association ("NMEDA") is not required to install hand controls, a NMEDA-certified technician will require that a customer seeking installation of hand controls undergo an evaluation to determine which type of hand control and other assistive devices are needed by the driver to operate the vehicle safely. Def.'s Facts ¶¶ 52, 55. This evaluation includes review of the customer's medical records, current medical status, medications, communication status, driving history, license status, visual acuity, muscle strength, flexibility, range of motion, coordination, reaction time, ability to drive with adaptive equipment, and driving goals. *Id.* ¶ 54. A NMEDA-certified technician will also require the customer to undergo training to use the type of hand control that is recommended. *Id.* ¶ 53. The evaluation and training is not carried out by the NMEDA-certified technician, but rather by a certified driver rehabilitation specialist. *Id.* ¶ 54.

## II. Factual Background

Plaintiff Scott Schutza is a paraplegic who requires the use of a wheelchair. Plaintiff's Uncontroverted Facts and Evidence ("Pl.'s Facts"), ECF No. 62-3 at 1–15, ¶ 1. Although Mr. Schutza cannot walk, he has full use of his hands, arms, and upper body. *Id.*

In 2008, Mr. Schutza purchased a Chevy Silverado. Tutt Decl. Ex. A at 14:7–18. He did not test drive the vehicle before purchasing it. Def.'s Facts ¶ 28. Mr. Schutza had permanent hand controls installed in his car. Tutt Decl. Ex. A at 14:19–15:18; *see also* Decl. of Scott Schutza ("Schutza Decl."), ECF No. 60-4, ¶ 3. Mr. Schutza learned to use hand controls without any formal evaluation or training. Pl.'s Facts ¶ 3.

Defendant Premier Automotive of California, LLC ("Toyota Poway") is the owner and operator of a Toyota dealership and a portion of the property at 13631 Poway Road, Poway, California, on which that dealership is located. *Id.* ¶¶ 4, 6. Toyota Poway is a facility open to the public, a place of public accommodation, and a business establishment. *Id.* ¶ 5.

In the summer of 2014, Mr. Schutza was in the market to buy a second vehicle. *Id.* ¶ 7; Def.'s Facts ¶ 1. On June 19, 2014, he visited Toyota Poway, Pl.'s Facts ¶ 8; Def.'s Facts ¶ 1, at which time he asked salesman Robert McCallister whether Mr. Schutza could test drive a Toyota Rav4 with hand controls. Pl.'s Facts ¶¶ 9–10; Def.'s Facts ¶ 2. Because Mr. McCallister was a new employee, Def.'s Facts ¶ 7, he informed Mr. Schutza that he would have to consult a more senior employee. Pl.'s Facts ¶ 11; Def.'s Facts ¶ 8. Mr. Schutza provided Mr. McCallister with his contact information so that Mr. McCallister could call Mr. Schutza back. Def.'s Facts ¶ 9.

Mr. McCallister later learned that Toyota Poway's policy was to have the customer contact a third-party mobility equipment company nearby, GoldenBoy Mobility ("GoldenBoy"), to discuss the nature of the customer's disability so that GoldenBoy could determine the appropriate hand control for the customer. *Id.* ¶ 11. Toyota Poway relies on GoldenBoy because Toyota Poway understands that customers may have different types of disabilities and that Toyota Poway does not possess the requisite knowledge to identify the proper hand controls for each customer and his or her needs. *Id.* ¶ 12. If GoldenBoy determines that hand controls can be installed temporarily, Toyota Poway would likely pay for the controls and their installation.[1] *Id.* ¶ 15. If the customer buys the vehicle after the test drive, the cost of the control would likely be tacked onto the cost of the car, with Toyota Poway providing a rebate for the modification. *Id.* ¶ 16. If, however, the customer does not buy the car, Toyota Poway would likely be saddled with the cost of the control. *Id.*

---

[1] Because this has "never happened," Toyota Poway "assum[ed]" what would happen were GoldenBoy to install temporary controls in a vehicle for a test drive. *See* Tutt Decl. Ex. C at 17:22–18:16.

¶ 17. Although the policy is unwritten, Tutt Decl. Ex. C at 18:18–19, and Toyota Poway does not train its employees on the policy, *see id.* at 18:20–21, Mr. Schutza recalls being told when he visited the dealership that Toyota Poway "ha[s] a company up there that they do business with, and [Toyota Poway] wanted to check with them or call them about the -- to see if it would be something they could accommodate [Mr. Schutza] with to put some temporary hand controls in the vehicle." Tutt Decl. Ex. A at 20:4–12.

At some time after Mr. Schutza visited Toyota Poway, Mr. McCallister followed up by phone to inform Mr. Schutza that the dealership did not have a Rav4 equipped with hand controls. Def.'s Facts ¶ 19. Although Mr. McCallister offered to drive Mr. Schutza around so that he could experience the Rav4 as a passenger, Mr. Schutza declined. Pl.'s Facts ¶ 14; Def.'s Facts ¶¶ 24–25. There is no indication whether Mr. Schutza ever contacted GoldenBoy about having a hand control installed in a Rav4 at Toyota Poway.

Ultimately, Mr. Schutza purchased a Lexus. Def.'s Facts ¶ 26. He did not test drive the vehicle before purchasing it. *Id.* ¶ 27.

Mr. Schutza has filed more than 100 cases under the Americans with Disabilities Act ("ADA"). *Id.* ¶ 31.

### III. Procedural Background

On November 7, 2014—nearly four years ago—Mr. Schutza filed a complaint alleging negligence and violations of the ADA, the Unruh Civil Rights Act, and the California Disabled Persons Act. *See* ECF No. 1. Toyota Poway moved for judgment on the pleadings, *see* ECF No. 17, which was denied. *See* ECF No. 34.

At the request of the parties, the Court stayed this action pending the Ninth Circuit's resolution of *Karczewski v. K Motors, Inc.*, No. 15-55588; *Karczewski v. DCH Mission Valley LLC*, No. 15-55633, *Schutza v. Courtesy Chevrolet Center*, No. 15-55631, *Schutza v. FRN of San Diego*, No. 15-55704; or *Karczewski v. Conant Auto Retail, San Diego, Inc.*, No. 15-55893. *See* ECF No. 36. After the parties notified the Court that the Ninth Circuit had issued a decision in *Karczewski v. DCH Mission Valley*, No. 15-55633, *see* ECF No. 41, the Court lifted the stay. *See* ECF No. 42.

The parties then jointly requested that the Court re-instate the stay because DCH Mission Valley, LLC filed a petition for panel rehearing and rehearing *en banc* with the Ninth Circuit. *See* ECF No. 44. The Court again stayed this action pending the Ninth Circuit's granting of DCH Mission Valley, LLC's petition or issue of a mandate. *See* ECF No. 45. After the parties informed the Court that the Ninth Circuit had issued a mandate, *see* ECF No. 46, the Court again lifted the stay in December 2017. *See* ECF No. 48.

Following a case management conference before Magistrate Judge Andrew G. Schopler, *see* ECF No. 50, the parties finally commenced discovery, *see* ECF No. 49, and participated in a mandatory settlement conference. *See* ECF No. 55. Judge Schopler set a fact and expert discovery cut-off of May 1, 2018, *see* ECF No. 51 at 1–2, with a final pretrial conference set for September 27, 2018. *See id.* at 5.

Mr. Schutza filed the instant Motion on May 31, 2018. *See* ECF No. 60. At the parties' request, *see* ECF No. 70, the Court vacated the final pretrial conference and pretrial filing deadlines pending resolution of the Motion. *See* ECF No. 71 at 2.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Mr. Schutza moves for partial summary judgment in his favor that Toyota Poway violated his rights under the ADA, the Unruh Civil Rights Act, and the California Disabled Persons Act, and for injunctive relief under the ADA requiring Toyota Poway "to develop and implement policies for installing temporary hand controls for test drives." Mot. at 1. Mr. Schutza reserves the issue of damages for trial, but notes that he will be dismissing his negligence claim "so that this motion can fully establish the issue of liability." *Id.* The Court therefore addresses in turn each of Plaintiff's claims under the ADA, the Unruh Civil Rights Act, and the California Disabled Persons Act.

**I.    First Cause of Action: Violation of the ADA**

Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, prohibits discrimination based on disability in places of "public accommodation." 42 U.S.C. § 12182(a). Specifically,

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation.

42 U.S.C. § 12182(a). As is relevant to this Motion, discrimination includes:

> A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(ii). To prevail on a claim under this provision, Mr. Schutza must establish that:

> (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendants employed a discriminatory policy; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Karczewski v. DCH Mission Valley*, 862 F.3d 1006, 1010 (9th Cir. 2017) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)). "If Plaintiff establishes a prima facie case, then Defendant 'must make the requested modification unless it proves that doing so would alter the fundamental nature of its business.'" *Karczewski*, 862 F.3d at 1010 (quoting *Fortyune*, 364 F.3d at 1082).

Here, Mr. Schutza argues that "test drives are a privilege, advantage, or accommodation offered by Toyota Poway to its customers," but that "Defendant violated the ADA by failing to extend the same privilege and service to disabled persons" and "by failing to install the temporary hand controls necessary to accommodate [Mr. Schutza's] disability." Mot. at 7–8. Mr. Schutza claims that

8

> installing temporary hand controls is a reasonable accommodation that would not fundamentally alter the nature of Defendant's business because (1) temporary hand controls are safe to use; (2) temporary hand controls are widely available and easy to install; (3) temporary hand controls do not physically modify or alter the vehicles on which they are installed.

*Id.* at 9. Toyota Poway counters that "summary judgment as to liability is inappropriate here because genuine issues of fact exist as to whether the portable hand control Schutza wants Toyota Poway to make available for test drives are universal and safe." Opp'n at 6. Toyota Poway's arguments center on Mr. Schutza's failure to establish that his proposed modification is reasonable, *see id.* at 7–17, and on Toyota Poway's contention that Mr. Schutza's proposed modification would fundamentally alter Toyota Poway's goods, services, and business. *Id.* at 18–20.

The Court agrees with Toyota Poway that genuine issues of material fact require the Court to deny Mr. Schutza's Motion. First, it is disputed whether Mr. Schutza ever requested that Toyota Poway install a temporary, purportedly universal hand control. Although Mr. Schutza testified that he requested a car with hand controls to test drive, *see* Tutt Ex. A at 19:7–18, it is not clear that he specifically requested Toyota Poway to install a temporary, universal hand control. *Cf.* Schutza Decl. ¶ 9. Indeed, Mr. McCallister did not recall Mr. Schutza specifically mentioning temporary hand controls. *See* Tutt. Decl. Ex. B at 16:9–15. There is therefore a genuine issue of material fact as to whether Toyota Poway "fail[ed] to make a *requested* . . . modification." *See Karczewski*, 862 F.3d at 1010 (quoting *Fortyune*, 364 F.3d at 1082) (emphasis added).

Second, it is disputed whether the proposed modification is reasonable. Each party has introduced expert testimony that conflicts in multiple respects. Plaintiff's expert, Jaime A. Martinez, is the CEO of QuicStick Hand Controls, a company that sells portable hand control units. *See* Declaration of Jaime A. Martinez ("Martinez Decl."), ECF No. 60–6, ¶¶ 2–3. In his expert report, Mr. Martinez opines that portable hand controls cost approximately $209 and do not require professional installation. Expert Rebuttal Report

of Jaime A. Martinez ("Martinez Report", ECF No. 60-7, at 1. He suggests that "any person can" install portable hand controls, and that "[t]he cost of a mechanic's installation . . . should be . . . around $5.00 per installation, calculated at a rate of $25–50 per hour pay rate." *Id.* Mr. Martinez claims that "[p]ortable hand controls have been developed to where [their] design fits all vehicles regardless of the make, model and year safely," *id.* at 2, although he testified at his deposition that customers of his with Toyota vehicles have had to return the QuicStick. *See* Tutt Decl. Ex. D at 65:11–21. Mr. Martinez opines that "[p]ortable hand controls require minimal strength to operate and any customer that has full range of hand control and motion can use this device safely and easily" and that "[p]ortable hand controls do not alter or interfere with any vehicle safety features required by federal regulations." Martinez Report at 2. He further explains that "[n]o Driving Rehabilitation specialist is necessary for a dealership that offers test drives using portable hand controls" because "[d]isabled customers who have used hand controls before or that are new at driving with portable hand controls can easily test drive a vehicle." *Id.* at 4. Although the Department of Motor Vehicles has indicated that hand controls "may" require training, Mr. Martinez opines that "no training is necessary" and that "portable controls do not put the driver or public in danger." *Id.* at 3–4. Mr. Martinez does not believe that "other devices are necessary for test driving a vehicle or for regular use." *Id.* at 5.

Toyota Poway's expert, on the other hand, a licensed and certified installer of a variety of hand controls, *see* Barton Decl. ¶¶ 1–6, opines that "[n]ot all vehicles can accommodate hand controls," such as "vehicles that do not have power steering, power brakes, and automatic transmissions." *Id.* ¶ 7. Although Mr. Barton agrees that temporary controls can be installed and removed without physically modifying a vehicle or its components, *see id.* ¶ 9, he contests whether they can be installed without training or used safely. For example, Mr. Barton opines that "[b]ecause portable hand controls are not permanently attached to the pedals, the clamps and rods can move, sway, slip, or come loose during use," which "presents a safety hazard." *Id.* ¶ 9(c). He also questions whether portable hand controls are compliant with federal regulations, including 49 C.F.R.

§ 571.124. *Id.* ¶ 10. Mr. Barton believes that all drivers requiring the use of a hand control "should be properly trained on the type of hand controls installed on a vehicle, regardless of whether the hand controls are installed on a permanent or temporary basis." *Id.* ¶ 11. This is because "[a] failure to train on new hand controls can lead to driver confusion, for example, confusing the brake for the accelerator control," and "[a]n untrained driver poses a safety risk to the driver, passengers, and the public." *Id.* ¶ 12. Because there are many types of hand controls, *see id.* ¶¶ 7–9, Mr. Barton believes that customers should be evaluated "to determine which type of hand control and other assistive devices are needed by the driver to safely operate the vehicle." *Id.* ¶ 11(a).

As the Ninth Circuit cautioned in *Karczewski*, "[w]hether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." 862 F.3d at 1011 (quoting *Fortyune*, 364 F.3d at 1083). In light of the conflicting testimony of the Parties' experts, "there is a genuine dispute as to the reasonableness of Plaintiff's . . . recommendation." *See Schutza v. CarMax Auto Superstores Cal., LLC*, No. 14-cv-2617-L-JLB, 2018 WL 4562771, at *5 (S.D. Cal. Sept. 24, 2018) (citing *Karczewski*, 862 F.3d at 1014).

Third and finally, there is a genuine factual dispute as to whether Mr. Schutza's proposed modification is "necessary to accommodate [his] disability." *See Karczewski*, 862 F.3d at 1010 (quoting *Fortyune*, 364 F.3d at 1082). It is undisputed that Toyota Poway has an existing policy in place for those who wish to test drive a vehicle using hand controls: they are to contact GoldenBoy, who assesses whether a temporary hand control is feasible based on the customer's individual disability and, if so, installs the controls for a test drive. *See generally* Tutt Decl. Ex. C at 9:22–18:16. At his deposition, Mr. Schutza testified that he was informed of Toyota Poway's existing policy. *See* Tutt Decl. Ex. A at 20:4–12. Neither party has submitted any evidence indicating whether Mr. Schutza followed up with GoldenBoy or attempted to utilize Toyota Poway's existing policy. There

therefore appears to be a genuine issue of dispute as to whether the installation of portable hand controls at Toyota Poway, as championed by Mr. Schutza, is necessary. *See, e.g.*, *Coleman v. Phoenix Art Museum*, No. CV 08-1833PHXJAT, 2009 WL 1097540, at *3 (D. Ariz. Apr. 22, 2009) (dismissing complaint for failure to state a claim where the plaintiff was denied access to a museum with his hip chair but offered wheel chairs), *aff'd*, 372 F. App'x 793 (9th Cir. 2010).

The Court therefore **DENIES** Mr. Schutza's Motion as to his first cause of action for violation of the ADA without reaching Toyota Poway's alternative arguments concerning whether Mr. Schutza's proposed modification would fundamentally alter Toyota Poway's goods, services, and business or whether Toyota Poway is exempted from having to install temporary hand controls in vehicles for test drives under 28 C.F.R. § 36.307 or 36.306.

**II.   Second and Third Causes of Action:  Violation of the Unruh Civil Rights Act and the California Disabled Persons Act**

Mr. Schutza alleges that Toyota Poway violated the Unruh Civil Rights Act and the California Disabled Persons Act because it violated the ADA. *See* Compl. ¶¶ 24, 27. Because the Court has concluded that genuine issues of material fact remain as to whether Mr. Schutza violated the ADA, *see supra* Section I, the Court also **DENIES** Mr. Schutza's Motion as to his second and third causes of action for violation of the Unruh Civil Rights Act and the California Disabled Persons Act.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Schutza's Motion. The Parties **SHALL CONFER** and **SHALL SUBMIT** a proposed schedule of pretrial dates and deadlines <u>within fourteen (14) days</u> of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  November 27, 2018

*[signature: Janis L. Sammartino]*
Hon. Janis L. Sammartino
United States District Judge